E. A. STROUT REALTY AGENCY, INC., Appellant, v. JAMES HARRINGTON, Respondent.— *Per Curiam.*

Gibson,
P. J., Reynolds, Staley, Jr., and Gabrielli, JJ., concur in memorandum *Per Curiam*. Herlihy, J., dissents, and votes to reverse and reinstate the verdict

in the following memorandum: It has been held that a verdict may be set aside and the complaint dismissed when the trial court finds "that by no rational process could the trier of facts base a finding in favor of the defendant upon the evidence * * * presented." (*Blum* v. *Fresh Grown Preserve Corp.*, 292 N. Y. 241, 245; *Wearever Upholstery & Furniture Corp.* v. *Home Ins. Co.*, 286 App. Div. 93, 95.) It has also been said that jury verdicts should be set aside only in cases where the verdict seems palpably wrong and it can be plainly seen that the preponderance is so great that the jury could not have reached its conclusion upon any fair interpretation of the evidence. (*Mann* v. *Hunt*, 283 App. Div. 140.) The party in whose favor a verdict is rendered is entitled to any fair inference in his favor which can be drawn from the facts introduced in evidence. The present case is an action by a real estate agency for commissions earned and the rule applicable is that the broker must establish that he produced a purchaser ready, willing and able to enter into a contract on the terms specified by the broker's employer. Having the above rules in mind, it is necessary to analyze the evidence produced on the trial. On or about September 25, 1958 the respondent retained the plaintiff through its local agent, Leonard Krupp, to sell a certain tract of land. This retainer was evidenced by a written agreement and provided that unless renewed it would expire in 1961 and further; that the selling price was to be $60,000, one half in cash and the balance by a purchase-money mortgage; that the plaintiff would receive a commission of 10% of the selling price. In January of 1961, the respondent conveyed out 5 acres of the subject property and in June of 1961 he leased out the rights to the oil and gas underlying the property for a period of 10 years. In November of 1961 the respondent and appellant renewed the original listing agreement for a further period of 3 years by executing a written form which purported to change the original listing only as follows: " Mineral rights reserved by owner "; and although still requiring $30,000 as down payment, the terms of the balance were left " open ". From 1958 Krupp negotiated with the State for the purchase of the subject property and he testified that the defendant was aware of such negotiations. On or about December 21, 1961 he submitted a proposal to the State offering the subject property for sale at $60,200. This proposal recites that it is subject to a 10-year easement and also subject to that acreage sold by the respondent. On February 12, 1962 the respondent wrote to Krupp asking him if he had yet heard anything from the State. Mr. Krupp testified that the respondent knew that the proposal did not reserve the mineral rights to the owner and that he knew that the respondent would agree with the terms of the proposal. By letter dated March 21, 1963 the State notified Krupp that it was ready to enter into a contract for the purchase of the subject property at $60,000. Krupp notified the respondent of the State's acceptance and that he had scheduled a meeting with the State's representative for April 3, 1963 to enter into a contract. At this point the jury could find that the appellant had procured a buyer ready, willing and able to purchase upon the terms of the respondent. The respondent failed to appear at this meeting and thereafter without consulting the plaintiff went to the State's representative and insisted on receiving more money for the property. The jury could have found from such failure to appear that the respondent wrongfully hindered and prevented the consummation of the sale. (See *Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 378, 384.) It further appears from the testimony of the agent of the State with whom Krupp had negotiated that on April 3, 1963 he had with him a prepared contract at the price of $60,000, but which did not expressly make the exceptions contained in the proposal. The respondent did not appear on this date and came to him at a later date and wanted more money. He further

testified that prior to his letter to Krupp advising that the State was ready to purchase at $60,000, the State had allocated the necessary funds to pay for this purchase. He indicated that the prepared contract did not necessarily represent the terms and conditions that the State was willing to buy on, and that the agreement of the State was subject to the proposal made by the buyer. As to the easement for mineral rights, this agent testified that it was mentioned in the proposal of sale. It appears that the Attorney-General's office had knowledge of the proposal. The proposal itself was not admitted into evidence in its entirety, but its terms were brought before the jury in the testimony. The respondent did not testify although he was apparently in court, and the respondent offered no testimony to rebut that of the plaintiff's witnesses and referred to hereinabove. Although the failure to testify does not allow any inference as to what his testimony would have been, the jury was entitled to give greater weight to that testimony which was contrary to the defendant's defense. (See *Noce* v. *Kaufman*, 2 N Y 2d 347, 353.) The trial court in response to appellant's request to charge, stated in part that "if the Jury find that there are some questions in their minds that are not clarified and that Harrington [respondent] could have clarified those, they may take that into consideration." The respondent's answer to the complaint herein as part of an affirmative defense specified that actually 65 acres were to be reserved by the respondent; that five acres conveyed out were to be excluded together with the lease of mineral rights; that the property was not to be sold to the State except for much more than the listed price of $60,000, and that the listing agreement was revoked as to any sale to the State on or before the acceptance by the State of the proposal. From this part of the answer the jury could properly find that the respondent intended to obtain more than the listed sales price from the State and that finding, together with the evidence on behalf of the appellant, would warrant an inference that the terms of the State were agreeable except for the purchase price which was in accordance with the listing agreement. The record as a whole supports the inference that the only material matter objectionable to this respondent was the price and that as to price the agency listing agreement established the appellant's performance of its duty. Such a finding would establish that the appellant had found a purchaser ready, willing and able to purchase on the respondent's terms and further, that the respondent had wrongfully refused to consummate the transaction. (*Sibbald* v. *Bethlehem Iron Co., supra.*) The court submitted to the jury the following special findings: (1) "Was the proposed contract or offer submitted by the State of New York on April 3, 1963 in accordance with the terms of the contract between the owner Harrington and the broker E. A. Strout Realty Agency, Inc.?" (2) "Was the State of New York ready, willing and able to purchase the said real property in accordance with the terms fixed in the contract between the owner Harrington and the broker E. A. Strout Realty Agency, Inc. on April 3, 1963?" The jury answered both questions with a "yes". Looking solely at the so-called contract referred to in question (1), the jury could not have rationally answered "yes". Taking all of the testimony, however, it was apparently the intention of the State to contract according to the proposal and the jury could have answered "yes", although the language of the contract indicates "no". In any event the so-called contract could not prohibit a "yes" answer to the second question submitted and accordingly, the court had no basis for setting aside the verdict. Based on the analysis of the evidence set forth above, it appears that the jury did not have to accept the written contract (or offer) of the State as being the best or sole evidence of the State's intention to purchase on the respondent's terms. This case differs substantially from the norm in that the State of

New York was a prospective purchaser and had allocated from its funds the asking price for the purchase of the property and that the State's method of doing business was more complicated than that of the ordinary individual, but from the record as a whole, and under the court's instruction, the jury could spell out an agreement, the culmination of which was prevented by the sole act of the defendant. There will be no relaxing of the general rule applicable to real estate commissions in reinstating the verdict in this action and legally, equitably and in the interest of justice it should be done. The order appealed from should be reversed and the verdict of the jury reinstated and judgment entered accordingly.